IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNIVERSAL CONNECTIVITY TECHNOLOGIES INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:23-CV-1177-RP |
| HP INC., | § § | |
| Defendant. | § § | |

## ORDER

Before the Court is a motion to transfer filed by Defendant HP Inc. ("HP"). (Dkt. 16).

Plaintiff Universal Connectivity Technologies Inc. ("UCT") filed a response, (Dkt. 34), and HP filed

a reply, (Dkt. 43).[1] Having considered the parties' briefs, the record, and the relevant law, the Court

finds that the motion should be granted.

## I. BACKGROUND

UCT filed its complaint on September 28, 2023. (Compl., Dkt. 1). UCT accuses HP of

infringing eight patents, including U.S. Patent Nos. 7,154,905 ("'905 Patent"), 7,187,307 ("'307

Patent"), 7,746,798 ("'798 Patent"), 9,232,265 ("'265 Patent"), 8,680,712 ("'712 Patent"), 7,856,520

("'520 Patent"), 7,921,231 ("'231 Patent"), and 9,852,103 ("'103 Patent") (collectively, the "Asserted

Patents"). (Id.). The accused products include "HP laptops, desktops, monitors, and docking

stations" that support certain DisplayPort and USB standards (the "Accused Products"). (Id.).

UCT's infringement allegations are based on these products' compliance with various USB and

DisplayPort standards. (Id.).

---

[1] UCT filed a response under seal, (Dkt. 37), and HP filed a sealed reply, (Dkt. 42). The Court entered an unredacted order granting the motion to transfer on June 25, 2024, (Dkt. 49), and ordered the parties to file proposed redactions. This order omits the minor portions of the order corresponding to the parties' proposed redactions.

On March 1, 2024, HP moved to transfer this action to the Northern District of California under 28 U.S.C. § 1404(a). (Mot. Transfer, Dkt. 16). HP alleges that the parties lack meaningful ties to Austin, witnesses and evidence are predominantly located in California or outside the Western District of Texas, and the public interest factors favor transfer. (*Id.*). UCT responded, suggesting that several witnesses are located in Texas, physical evidence is located in Texas, and the public interest factors favor keeping the case here. (Resp., Dkt. 34).

## II. LEGAL STANDARD

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, "[t]he threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If so, the Court turns to consideration of "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847, at 370 (1986)).

The relevant factors include matters of both private and public interest. *Volkswagen AG,* 371 F.3d at 203; *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private-interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the

governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. *Id.* No single factor is dispositive. *Id.*

The Court must also "give some weight to the plaintiffs' choice of forum." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 n.6 (2013). However, the plaintiff's venue choice "is neither conclusive nor determinative. *In Re: Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003). Rather, the party seeking transfer must show "good cause": a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Humble Oil & Refining Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). Thus, when the transferee venue is "not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). But when the movant demonstrates that the transferee venue is clearly more convenient, "it has shown good cause and the district court should therefore grant the transfer." *Id.*

### III. DISCUSSION

**A. Whether the Case Could Have Been Brought in the Northern District of California**

"The preliminary question under 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. In other words, a movant must show that venue and jurisdiction would have been proper in the transferee forum when the plaintiff filed suit. *XR Commc'ns, LLC v. Google LLC*, No. 6:21-CV-00625-ADA, 2022 WL 3702271, at *2 (W.D. Tex. Aug. 26, 2022). The parties agree that venue and jurisdiction would have been proper in the Northern District of California. (Mot. Transfer, Dkt. 16, at 13; Pl.'s Resp., Dkt. 34, at 7). HP is subject to jurisdiction in California for the purposes of this suit and venue is appropriate in the district. Therefore, the preliminary question is satisfied.

**B. Private Interest Factors**

The private-interest factors include: (1) the availability of compulsory process to secure witnesses' attendance; (2) the relative ease of access to sources of proof; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The Court will address each factor in turn.

1. Availability of Compulsory Process to Secure Attendance

This factor focuses on "non-party witnesses whose attendance may need to be secured by a court order." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019) (citing *Volkswagen II*, 545 F.3d at 316). "When there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018). A court may subpoena a witness to attend trial only (A) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (B) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii).

HP alleges that the majority of the inventors of the Asserted Patents—at least 20 out of 29 named inventors—appear to reside in California. (Mot. Transfer, Dkt. 16, at 10). HP notes that these inventors' testimony is likely to prove relevant to the case and, if the case goes to trial, that they may be compelled to testify. (*Id.* at 16 (citing *Voice Technologies Group v. VNC Sys.*, 164 F.3d 605, 615 (Fed. Cir. 1999) ("The testimony of the inventor may also provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems."))). UCT contends that the locations of these inventors have not been verified, their testimony will largely be duplicative, and, after accounting for duplication,

they are outweighed by a comparatively higher number of non-party witnesses in Texas. (Resp., Dkt. 37, at 10–12).

As to the certainty of the inventors' locations, HP has provided sufficient evidence to suggest that the overwhelming majority of inventors will reside in California. At least 20 of 29 inventors currently list their residence in California. Relying on *Honeywell Int'l Inc. v. Zebra Techs. Corp.*, UCT suggests that the Court should "disregard[] the named inventors on [a] patent because the Court has no reliable evidence as to where the named inventors live." No. 6:21-CV-1010-ADA, 2022 WL 2161058, at *6 (W.D. Tex. June 15, 2022). However, the district court in *Honeywell* dealt with a movant who relied *only* "on the location identified on the face of the [] patent." *Id.* Here, by contrast, HP provides the locations identified on the patent, the LinkedIn profiles of the inventors, and the location of the company that developed the patents. (*See* Exs., Dkts. 16-8 to 16-37). While it is possible that certain profiles are not up to date or inventors have since moved, the large majority appear to reside in California.

Nor does the potentially duplicative testimony of the inventors weigh strongly against transfer. UCT suggests that the Court should essentially disregard the weight of any additional witness when their testimony is duplicative. (Resp., Dkt. 37, at 15). In *XR Commc'ns, LLC v. HP Inc.*, this Court noted, "Because four of those witnesses are inventors who worked on the same patent, their testimony would likely be duplicative."[2] No. 6:21-CV-694-ADA, 2022 WL 3448746, at *4 (W.D. Tex. Aug. 17, 2022). While duplicative testimony is entitled to less weight, the Court does not wholly disregard subsequent witnesses on the same topic as irrelevant to the transfer analysis. Although inventors on the same patent are likely to have similar testimony, that similarity is not assured, and it is possible that they will offer varying testimony. That is especially true here, where

---

[2] The Court nonetheless found that the factor favored transfer as "there are still more third-party witnesses within the subpoena power of the NDCA" than WDTX. *XR Commc'ns, LLC v. HP Inc.* 2022 WL 3448746, at *4.

UCT asserts that its predecessors complied with VESA and USB-IF and IPR policies. (*See* Mot. Transfer, Dkt. 16, at 4–8). Individual inventors may have unique knowledge of this fact-bound compliance inquiry, even if they collaborated on the same patent.

Next, HP contends that UCT's predecessors-in-interest—Lattice Semiconductor Corp. ("Lattice") and Silicon Image—are connected to the Northern District of California and evidence (as well as witnesses) from them are likely to have remained there. (*Id.* at 8). The Asserted Patents were originally assigned to Silicon Image, Inc., a company which was headquartered in Sunnyvale, California with current operations in San Jose, California. (*Id.*). In 2015, Silicon Image was acquired by Lattice, which is headquartered in Hillsboro, Oregon with operations in San Jose, California. (*Id.*). The Asserted Patents were assigned to Lattice in 2015, before they were later assigned to UCT, which is a non-practicing entity incorporated in Delaware. HP also alleges that Lattice will have information related to the Asserted Patents which will be easier to access from the Northern District. (*Id.*). HP further alleges that Lattice employees will likely be called to testify about their inventions, their efforts to commercialize the inventions, and whether they "complied with VESA and USB-IF IPR policies." (Mot. Transfer, Dkt. 16, at 12 (quoting Compl., Dkt. 1, at 30–31)).

[The details of this paragraph have been redacted. It noted that witnesses related to UCT's predecessors are likely to remain in California, tilting the factor in HP's favor.]

Finally, UCT identifies several TI employees who live in Dallas and may possess relevant information. (Resp., Dkt. 37, at 16). HP contends that these witnesses were not properly disclosed in the parties' venue discovery and therefore, consideration of their location should be excluded. (*Id.*).[3] Venue discovery closed on April 30, 2024. (Scheduling Order, Dkt. 31, at 1). UCT filed amended responses to HP's venue interrogatories on May 14, identifying for the first time six employees for

---

[3] UCT moves to strike HP's request to exclude these witnesses, arguing that HP did not properly confer under the Local Rules. (*See* Mot. Strike, Dkt. 44). HP did not file a motion, so no certificate of conference was necessary. *See* W.D. Tex. Loc. R. CV-7(G).

TI who reside in Dallas. (Reply, Dkt. 41, at 9–10). Federal Rule of Civil Procedure 37 instructs that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, UCT does not dispute that its disclosure was late, but instead argues that its late disclosure was harmless. (*See* Mot. Dkt. 44). The harm is evident in that HP could not take proper discovery of the late-disclosed witnesses or effectively contest why those employees may not need to be subpoenaed. Indeed, the relevance of the TI witnesses remains unclear, as they were the result of a search designed to identify "Texas-based TI employees on LinkedIn who have work experience at TI in the area of power delivery controllers[.]" (Mot. Strike, Dkt. 45-1, at 5). It is unclear whether these employees are in fact the best witnesses to offer testimony, and that factually undeveloped record stems largely from the tardy disclosures. Because UCT's late disclosures hampered HP's ability to take full discovery, the Court shall disregard them pursuant to Rule 37.[4]

Overall, the inventors of the Asserted Patents and UCT's predecessors-in-interest reside in the Northern District of California. Many non-party suppliers may also have relevant testimony and are predominantly located in the Northern District of California. *See infra*, Section III.B.2. Finally, there appear to be no unwilling witnesses who reside in Austin. Accordingly, the first factor favors transfer.

2. Relative Ease of Access to Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *WAG Acquisition, L.L.C. v. Google*

---

[4] UCT includes other late disclosures in its response relating to exhibits rather than witnesses, including [redacted]. (*See* Reply, Dkt. 42, at 9–10). Even considering that late-disclosed exhibit, the Court finds that transfer is still warranted. It therefore does not decide whether HP was harmed by the disclosure of the exhibit beyond the location of the late-disclosed witnesses.

*LLC*, No. W-21-CV-00816-ADA, 2022 WL 9569437, at *3 (W.D. Tex. Oct. 5, 2022). In "patent

infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re*

*Nintendo*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed.

Cir. 2009)). "Consequently, the place where the defendant's documents are kept weighs in favor of

transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*,

566 F.3d at 1345).

 HP contends that the "majority of evidence relating to the accused hardware and firmware is

in the possession of the nonparty suppliers, and each of those nonparty manufacturers has a place of

business in the Northern District of California." (Mot. Transfer, Dkt. 16, at 18). HP alleges that

non-party suppliers Intel, AMD, and NVIDIA have headquarters in the Northern District of

California,[5] while Qualcomm maintains its headquarters in the Southern District of California.

(Murray Decl., Dkt. 16-53). Three other non-party suppliers, Infineon, Realtek, and Nuvoton, have

headquarters abroad but also maintain offices in the Northern District of California. (*Id.*). Lastly, TI

is headquartered in Dallas but maintains offices in Santa Clara. (*Id.*).

 On balance, the locations of the non-party suppliers lean in favor of transfer. AMD,

NVIDIA, and Qualcomm all have California offices and will likely have responsive documents.

UCT suggests that Qualcomm and NVIDIA directory webpages "show locations in Austin, Texas,

meaning it is just as likely that relevant evidence is located in WDTX." (*Id.* at 9). But it is more likely

that information will be made available in a company's headquarters than its satellite office, so the

factor still favors California. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). UCT

alleges that Intel and Nuvoton lack documents responsive to their interrogatories and that Realtek

does not appear to operate out of its California office. (Resp., Dkt. 37, at 8–9). The fact that these

---

[5] These three companies have satellite offices in Austin. (Mot. Transfer, Dkt. 16, at 14). Still, it is not evident
that those offices related to the Accused Products or Asserted Patents.

supplies may lack documents responsive to *UCT's* interrogatories does not mean the supplier will lack responsive documents to *HP*'s requests. It is reasonable to expect that Intel, as the supplier of processors and chipsets to HP, will possess responsive documents to HP's licensing and damages defenses, even if it lacks documents related to UCT's Asserted Patents. (*See* Reply, Dkt. 42, at 3 n.1).

UCT next contends that served subpoenas on AMD and TI in their Dallas offices. (Resp., Dkt. 37, at 8–9). If anything, this speaks to the availability of compulsory process, not necessarily the ease of access of proof. Acceptance of a subpoena in one office does not automatically signal that the company's responsive documents are in that same office. It does not automatically follow that offices are more likely than their corporate headquarters to have responsive documents solely because those offices accepted service of a subpoena in the same state where a case is pending. Even if the Court were to consider where subpoenas were served, these locations would still suggest that California is more convenient. Only one supplier (Infineon) was served in the Western District of Texas, two suppliers were served in the Northern District of Texas (AMD and TI), and at least three suppliers were served in the Northern District of California (Nuvoton, NVIDIA, Qualcomm, and potentially Intel). Accepting UCT's subpoenas as indicative of supplier locations, three are in the transferee forum, while only one supplier accepted service in this district, so this weighs in favor transfer. *See Super Interconnect Techs. v. Google LLC*, No. 6:21-CV-00259-ADA, 2021 WL 6015465, at *7 (W.D. Tex. Nov. 8, 2021) (noting that the district court should not have considered the availability of information in Dallas when considering whether to keep suit in Waco).

Beyond suppliers, the location of Standards Setting Organizations ("SSOs") favor transfer. In its complaint, UCT seeks a declaration that neither it nor its predecessors-in-interest violated the intellectual property rights of two SSOs: VESA and USB-IF. (*See* Compl., Dkt. 1). Both SSOs are headquartered in Oregon, closer to the Northern District of California than Texas. (Mot. Transfer, Dkt. 16, at 12). VESA also maintains an office in San Jose, California. (*Id.*). UCT contends that it is

purely speculative whether the SSOs will have relevant evidence. (Resp., Dkt. 37, at 14). On the face of UCT's complaint, however, the SSOs appear sufficiently likely to possess relevant evidence. UCT's complaint contains multiple references to the SSOs' VESA and USB-IF standards, and their compliance with these standards form the core of UCT's declaratory judgment cause of action. (*See* Compl., Dkt. 1, at 30–32). It similarly forms the basis of HP's seventh and eighth affirmative defenses related to SSO's licenses. (*See* Answer, Dkt. 12, at 13–14).

As to its own evidence, HP states that "any HP engineering work relating to the Accused Functionalities took place entirely outside of this District, in Taipei, Taiwan" and Spring, Texas (a suburb of Houston, in the Southern District of Texas). (Mot. Transfer, Dkt. 16, at 18). UCT suggests that this factor supports venue in Austin because "relevant testing occurs in [HP's] Spring, Texas location." (Resp., Dkt. 37, at 11–12 ("[T]he Fifth Circuit has clarified that the 'location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature.'") (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022))). But Houston is not Austin, and the evidence's location in a separate—even if neighboring—district does little to support venue here. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) ("[T]he fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer."); *In re Apple*, 2021 WL 5291804, at *2 (noting that ease of proof weighed in favor of transfer when "the district court did not identify any sources of proof located in the Western District of Texas"). Further, UCT fails to explain why or how the testing center is likely to provide evidence. (Resp., Dkt. 37, at 11–12). Overall, there are no sources of proof in the Western District of Texas, there are several suppliers with evidence in the Northern District of California, and the location of testing in an adjacent Texas district is effectively offset by the SSO's adjacent location to the Northern District of California. Therefore, the factor weighs in favor of transfer.

3. Cost of Attendance

The cost of attendance focuses on willing witnesses, and the factor considers both party and non-party witnesses. *Vargas v. Seamar Divers Int'l, LLC*, No. 2:10-CV-178-TJW, 2011 WL 1980001, at *7 (E.D. Tex. May 20, 2011) (citing *Volkswagen I*, 371 F.3d at 204). This factor is often considered the most important factor to be considered in deciding whether to transfer venue. *Moss v. Lockheed Martin Corp.*, No. 3:10-CV-1659-M, 2011 WL 197624, at *5 (N.D. Tex. Jan. 18, 2011) (citing *AT&T Intell. Prop. I L.P. v. Airbiquity Inc.*, No. 3:08–CV–1637–M, 2009 WL 774350, at *5 (N.D. Tex. Mar. 24, 2009)). The Fifth Circuit employs a "100-mile rule" which states that when "the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. The Federal Circuit has stated that courts should not apply the rule rigidly if witnesses will have to travel a significant distance regardless of the venue. *In re Apple*, 979 F.3d at 1342.

Here, UCT again relies on a late supplemental disclosure that includes nine HP employees it identified on LinkedIn who mention "USB" on their profiles. (Resp., Dkt. 37, at 9). For the same reasons that the Court does not consider the TI witnesses, it does not consider these late-disclosed HP witnesses. Even if the Court did weigh the locations of these witnesses, it is not clear that they are likely to be called at trial—or even subpoenaed. Simply listing nine Texas HP employees who mention "USB" in their biography does not show that they are likely to testify regarding the Accused Products.[6] Many employees at a large company may have knowledge of a product or technology, but the relevant inquiry is which employees will reasonably be expected to serve as

---

[6] Indeed, HP disputes the relevance of these witnesses, suggesting that one "does not work on the accused products;" another "was not responsible for the design, development, or architecture of any USB, power delivery, or DisplayPort functionality;" and another "is no longer at HP" and "worked on cameras with USB and HDMI ports" that "are not accused of infringement." (Reply, Dkt. 39-1, at 6).

witnesses. *See WirelessWerx IP, LLC v. Google, LLC*, No. 6:22-cv-01056-RP (W.D. Tex. filed Oct. 7, 2022) (Order, Dkt. 49, at 7–8) (noting that mere presence of employees with knowledge on a topic does not weigh in favor of transfer if those employees are not likely to testify). Moreover, UCT cannot attempt to show that the employees are predominantly located in Texas unless it also provides similar information related to the number of responsive HP employees in California. In its own designations, HP listed four fact witnesses about the Accused Products, who reside in Palo Alto, San Diego, Houston, and Taiwan, suggesting that California is more convenient. (Mot. Transfer, Dkt. 16, at 17).[7]

As for Plaintiff-side witnesses, UCT contends that its Canadian parent company, WiLAN, has two employees in Collin County (near Dallas) and another in the Austin area. (Resp., Dkt. 37, at 6). However, UCT does not allege that the Austin-area witness is relevant to the case or likely to testify. (*See id.*). The alleged relevance of one Dallas witness is that he attended a pretrial meeting between the parties and spoke regarding HP's alleged infringement. (*Id.*). Although that witness may have other relevant testimony, any discussion of pretrial negotiations with HP would constitute inadmissible testimony. *See* Fed. R. Evid. 408 (noting that compromise negotiations are generally

---

[7] The parties dispute whether the Northern District of California is meaningfully more convenient than the Western District of Texas for witnesses from Taiwan. The Fifth Circuit has characterized travel from China to Texas as an "immense inconvenience" involving "thousands of extra miles" and therefore favored venue in California. *In re TikTok, Inc.*, 85 F.4th 352, 361–62 (5th Cir. 2023). The Federal Circuit has suggested that courts should not afford great weight to where in the country an international witness should travel. *See In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) ("The witnesses from Europe will be required to travel a significant distance no matter where they testify."); *In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020) (noting same). Undoubtedly, California is at least somewhat more convenient than Austin for witnesses from Taiwan or China. Under the Fifth Circuit's 100-mile rule, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. A trip from Taiwan to California may be slightly easier than a trip to Texas, but the proportion of that extra distance is small in comparison to the overall distance from Taiwan to the United States. Therefore, except in cases where the large majority of witnesses are located in Taiwan or China, the difference is unlikely to carry significant weight. *Cf. In re TikTok*, 85 F.4th at 362 (noting California was more convenient where "the bulk of relevant witnesses are in China.") (cleaned up). Here, one main witness is located in Taiwan, marginally tilting in HP's favor.

inadmissible). Overall, UCT identifies only one Texas witness (outside this district) with relevant knowledge and another who may or may not prove relevant.

In sum, HP identifies one witness in the Northern District of California, while UCT identifies no witnesses in the Western District of Texas. One witness lives out-of-district in California while two potential witnesses live out-of-district in Texas. The remaining two witnesses both reside closer to California than Texas. Therefore, the factor leans in HP's favor.

### 4. Other Problems

"When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. HP suggests that this factor may favor transfer because the "case remains in its earliest stages[.]" (Mot. Transfer, Dkt. 16, at 23). However, while a late motion to transfer may weigh against transfer, an early motion to transfer does not weigh in favor of transfer. The timeline of HP's motion to transfer is neutral.

Next, UCT contends that judicial economy favors the case remaining in Texas because UCT has a pending case in the same Court against Dell, and "HP agreed to consolidate this case with the Dell case for claim construction proceedings[.]" (Resp., Dkt. 37, at 14 (referencing *Universal Connectivity Techs. Inc. v. Dell Techs. Inc.*, No. 1:23-cv-1506-RP (W.D. Tex. filed Dec. 12, 2023))). However, the Federal Circuit has cautioned against denying transfer due to related cases, noting that it would "be effectively inoculating a plaintiff against convenience transfer under § 1404(a) simply because it filed related suits against multiple defendants in the transferor district." *In re Google Inc.*, No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017). Moreover, the *Dell* action was filed after this suit was initiated, so the co-pending suit does not affect the transfer analysis, which considers the circumstances at the time the complaint was filed. *See In re EMC Corp.*, 501 F. App'x. 973, 976 (Fed. Cir. 2013) ("Motions to transfer venue are to be decided based on 'the situation which existed

when suit was instituted'. . . . Any subsequent familiarity gained by the district court is therefore irrelevant.") (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). Finally, HP's willingness to consolidate claim construction does not bind it to keep the suit here. To hold otherwise would have the practical effect of discouraging parties from stipulating to consolidated claim construction, ultimately harming judicial economy in the long run. Accordingly, the Court declines to hold the agreement to consolidate claim construction against HP. Overall, this factor is neutral.

### C. Public Interest Factors

#### 1. Administrative Difficulties Flowing from Court Congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The relevant inquiry under this factor is the "speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343 (citations omitted). This factor is "the most speculative" and is given little weight compared to the other transfer factors. *XR Comm'ns*, 2022 WL 3702271, at *9 (citing *In re Genentech*, 566 F.3d at 1347). As the sole active federal judge in Austin, the undersigned has a particularly busy caseload, with over 900 pending civil cases. However, the Federal Circuit recently "noted that 'the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.'" *In re Apple*, 2021 WL 5291804, at *4 (quoting *In re Juniper Network*s, 14 F.4th at 1322). Although this factor likely weighs in HP's favor, the speculative nature of court congestion as well as the similar disposition times between the two courts suggest that the factor should not decisively move the needle in either direction.

#### 2. Local Interest

Under this factor, courts evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 315. The factor focuses on the "significant connections between a

particular venue and the events that gave rise to a suit." *In re Google*, 2021 WL 4427899, at *5 (internal citations omitted). While HP has an office in Austin, its headquarters is located in California. (Mot. Transfer, Dkt. 16, at 6). *See WirelessWerx*, No. 6:22-cv-01056-RP (Order, Dkt. 49, at 9) (noting that the location of a company's headquarters generally has a "greater local interest in cases" than the location of its smaller satellite office); *XR Commc'ns*, 2022 WL 3702271, at *9 ("Google has a general presence in this District, but this Court would clearly abuse its discretion in according any weight to it."); *In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) ("The court's reliance on [in-district] offices, which lack such a connection to the locus of the events giving rise to the dispute, amounts to a clear abuse of discretion.").

Here, the Asserted Patents were developed in or near the Northern District of California. (Mot. Transfer, Dkt. 16, at 6). Many of the Asserted Patents' inventors, as well as HP's employees, third-party suppliers, and witnesses reside in the Northern District of California. (*Id.*). UCT, by contrast, is a non-practicing entity incorporated in Delaware with a parent company in Canada—in other words, UCT has no ties to this District. Accordingly, the local interest favors California. Overall, this factor weighs heavily in favor of transfer.

Most problematically, the case lacks any material ties whatsoever to Austin. Throughout their briefing, the parties mention zero significant ties to Austin.[8] UCT's best argument to maintain venue in the Western District of Texas is that some witnesses reside in Houston or Dallas—not in Austin or even in this District. *See infra*, Section III.B. The only mentions of Austin deal with ancillary matters, such as the satellite office of a third-party supplier or the location of Lattice's associate general counsel. *Id.* Put simply, there is no relevant connection to Austin or the Western District of Texas. The location of some witnesses or evidence in other Texas cities more than 100

---

[8] [Redacted].

miles away cannot sustain venue in this District.[9] There is no valid basis for the suit to remain in Austin over a clearly more convenient venue in California. The Court is concerned that UCT may have had forum-shopping motivations when it chose to file suit here.

### 3. Familiarity with the Law and 4. Conflict of Laws

The remaining two factors are neutral. Plaintiff alleges violations only of federal patent law, and there are no issues involving conflict of laws. *See XR Comm'ns*, 2022 WL 3702271, at *10. Accordingly, these two factors weigh in neither direction.

### D. Balance of Factors

For the reasons discussed above, the balance of the factors clearly weighs in favor of transfer. Four factors—the ease of access to proof, availability of compulsory processes, cost of attendance, and local interests—weigh in favor of transfer. Four factors—court congestion, familiarity of law, conflict of law, and miscellaneous problems—are neutral. No factor weighs in favor of keeping venue in the Western District of Texas, and this suit lacks any relevant connection to Austin. Therefore, because venue is clearly more convenient in the Northern District of California, the Court will grant HP's motion to transfer.

### IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that HP's Motion to Transfer Venue, (Dkt. 16), is **GRANTED**.

**IT IS FURTHER ORDERED** that UCT's Motion to Strike, (Dkt. 44), is **DENIED**.

---

[9] *See In re Honeywell Int'l Inc.*, No. 2023-152, 2024 WL 302397, at *3 (Fed. Cir. Jan. 26, 2024) ("The court found that the convenience of the willing witnesses weighed against transfer, pointing to the presence of three Lone Star employees in Texas. Those individuals, however, do not live in the Western District of Texas, and it appears they will need to travel more than 100 miles to reach either forum, though admittedly their travel to the Western District of North Carolina would be more extensive. . . . With Honeywell's employee witness in the Western District of North Carolina and no willing witness identified in the Western District of Texas, it cannot fairly be said that the willing witness factor supports keeping this case in Waco, Texas.").

**IT IS FINALLY ORDERED** that this case is **TRANSFERRED** to the Northern District of California.

**SIGNED** on July 3, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE